# In the United States Court of Federal Claims

No. 19-911
Filed: May 6, 2020
Reissued: May 22, 2020[1]

|  |  |
|---|---|
| JOHN DOE, | ) |
| Plaintiff, | ) RCFC 12(b)(1); Motion to Dismiss; |
| | ) Subject-Matter Jurisdiction; Tucker Act; |
| v. | ) 28 U.S.C. § 1491; Statute of Limitations; |
| | ) 28 U.S.C. § 2501; Equitable Tolling; *John* |
| THE UNITED STATES, | ) *R. Sand & Gravel Co. v. United States*, |
| | ) 552 U.S. 130 (2008); Accrual Suspension |
| Defendant. | ) Rule; Time-Barred. |

*Christopher Samuel Morris*, Morris Law Firm, APC, San Diego, CA, for plaintiff.

*Joseph Alan Pixley*, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

**OPINION AND ORDER**

*SMITH*, **Senior Judge**

Before the Court is defendant's Motion to Dismiss. On June 21, 2019, plaintiff, John Doe, filed his Complaint with this Court, alleging, *inter alia*, that the United States Immigration and Customs Enforcement Agency ("ICE" or "Agency") breached its contract with plaintiff by not paying for services that he rendered as a confidential informant. *See generally* Plaintiff's Complaint (hereinafter "Compl.") at 9–10. Accordingly, plaintiff seeks damages "in an amount to be proven at trial," reasonable attorney's fees, and reasonable costs and expenses associated with the filing of this action. Compl. at 14. On October 21, 2019, defendant filed its Motion to Dismiss pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), arguing that plaintiff "has failed to establish the existence of an express contract" with ICE. Defendant's Motion to Dismiss (hereinafter "Def.'s MTD") at 1. For the reasons set forth below, the Court grants defendant's Motion to Dismiss.

### I. Background

#### A. Factual History

The parties disagree about the events that led up to the execution of the purported contract between the plaintiff and ICE. Defendant claims that the parties' entire agreement is a document entitled "Instructions to Confidential Source" ("Instructions"), which the plaintiff and

---

[1] An unredacted version of this Opinion and Order was issued under seal on May 6, 2020. The parties were given an opportunity to propose redactions, but no such proposals were made.

ICE employee Special Agent ("SA") Ryan McEnany[2] executed on August 10, 2007. Def.'s MTD at 2–3, Ex. A. Plaintiff, however, contends that the Instructions do not constitute the entirety of the parties' contract. *See* Plaintiff's Opposition to Motion to Dismiss (hereinafter "Pl.'s Resp.") at 6. Rather, plaintiff claims that he signed a separate written contract ("Agreement"), but that he was not provided with a copy of that Agreement for "safety reasons." *Id.* at 3. Specifically, plaintiff asserts that, when he was arrested in early 2008, SA McEnany gave him the "green light" to "perform certain functions on behalf of ICE, to which he would be compensated" in lieu of serving jail time. Compl. at 4; *see also* Pl.'s Resp. at 3. According to plaintiff, compensation would include "up to 25% of all assets seized, 25% of all cash seized, and $1,000 per kilo of drugs seized," including "any assets, money or drugs seized by ICE that was 'reasonably caused' by Plaintiff's information." Pl.'s Resp. at 3.

While serving as a confidential informant, plaintiff participated in at least three operations. Compl. at 4–6. In one of the first operations in New York, plaintiff's information resulted in an arrest and the seizure of 225 kilos of cocaine and $220,000 in cash. *Id.* at 3; *see also* Pl.'s Resp. at 3. When plaintiff inquired about payment, he was told that he would have to wait for ICE to complete the related "chain of leads," which would determine the final amount of compensation to which he was entitled. Pl.'s Resp. at 3. On February 5, 2008, plaintiff received a check for $10,000 from ICE and was told by SA McEnany that it was "just a down payment" with "more [] to come." *Id.*; *see also* Compl. at 6. When ICE "botched" the third operation in New York, exposing plaintiff as a confidential informant, plaintiff threatened to sue for the amount owed to him. Compl. at 6. On April 8, 2008, ICE "deactivated" plaintiff as a confidential informant. Def.'s MTD at 6. Since then, plaintiff has been in hiding due to "the constant threat of harm to himself and his family," and he has not yet been paid in full, in accordance with the terms of the alleged Agreement. Compl. at 7.

### B. Procedural History

On June 21, 2019, plaintiff filed his Complaint with this Court, seeking enforcement of the terms of the Agreement and payment for services allegedly rendered. Compl. at 9–10. Plaintiff claims that ICE, by failing to compensate plaintiff for the assets, money, and drugs seized during operations in which he participated, breached the terms of the Agreement and the implied covenant of good faith and fair dealing. *Id.* Additionally, plaintiff alleges that ICE's false promise for compensation and its negligent misrepresentations caused him "substantial harm." *Id.* at 11–12.

On October 21, 2019, defendant filed its Motion to Dismiss, arguing that the Court should dismiss plaintiff's Complaint for lack of subject-matter jurisdiction, pursuant to RCFC 12(b)(1). Def.'s MTD at 1. Specifically, defendant asserts that plaintiff "failed to establish the existence of an express contract, as evidenced by an agency document entitled 'Instructions to Confidential Source,' which is not a contract within the meaning of the Tucker Act." *Id.*; *see*

---

[2] In his Complaint, plaintiff refers to the Special Agent as "Agent McEnny." *See generally* Plaintiff's Complaint. In its Motion to Dismiss, however, the government clarifies that the Agent's name is actually "McEnany." Defendant's Motion to Dismiss at 3, n.3. As such, the Court refers to the Special Agent as Agent McEnany.

*also* 28 U.S.C. § 1491 (2018). Additionally, defendant asserts that, pursuant to 28 U.S.C. § 2501 (2018), plaintiff's Complaint is untimely, as the alleged breach would have occurred in April of 2008, and therefore plaintiff's Complaint is time-barred by this Court's six-year statute of limitations. Def.'s MTD at 1, 9–10.

In response, plaintiff argues that defendant's jurisdictional challenge under RCFC 12(b)(1) fails because plaintiff sufficiently established the existence of a contract, consistent with 28 U.S.C. § 1491(a)(1). Pl.'s Resp. at 5. Furthermore, plaintiff argues that "the statute of limitations has been tolled as it was not until recently that Plaintiff became aware of Defendants' [sic] refusal to comply with the terms of the Agreement." *Id.* at 8.

In its Reply, defendant argues that, even viewed in the light most favorable to plaintiff, the statute of limitations bars plaintiff's claims because all of the events "giving rise to this action accrued no later than 2008." Defendant's Reply in Support of its Motion to Dismiss at 2. Defendant further argues that, even if the Court finds that plaintiff's claim is timely, plaintiff's claim should still be dismissed because plaintiff has failed to establish that an express contract exists. *Id.* at 4, 7. The Court held oral argument on March 12, 2020. Defendant's Motion to Dismiss is fully briefed and ripe for review.

## II.     Standard of Review

This Court's jurisdiction is primarily defined by the Tucker Act, which waives the sovereign immunity of the United States for claims not sounding in tort that are founded either upon the Constitution, an Act of Congress, an executive department regulation, or an express or implied contract with the United States. *See* 28 U.S.C. § 1491(a)(1). The Tucker Act is merely a jurisdictional statute, however, and "does not create a substantive right of action" enforceable against the United States for money damages. *Rick's Mushroom Serv. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008) (citing *United States v. Testan*, 424 U.S. 392, 398 (1976)); *Quimba Software, Inc. v. United States*, 132 Fed. Cl. 676, 680 (2017) (citing same). Rather, to fall within the scope of the Tucker Act, "a plaintiff must identify a separate source of the substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005).

When considering a motion to dismiss for lack of subject-matter jurisdiction, the Court must accept as true any undisputed allegations of fact made by the non-moving party. *Oakland Steel Corp. v. United States*, 33 Fed. Cl. 611, 613 (1995) (citing *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988)). However, the plaintiff still bears the burden of establishing by a preponderance of the evidence that this Court has jurisdiction over its claims. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When relevant facts related to the issue of jurisdiction are in dispute, the Court may make such factual findings that are decisive of the jurisdictional issue. *Hedman v. United States*, 15 Cl. Ct. 304, 306 (1988).

## III.    Discussion

The statute of limitations is "an express limitation on the Tucker Act's waiver of sovereign immunity." *Hart v. United States*, 910 F.2d 815, 817 (Fed. Cir. 1990); *see also* 28

U.S.C. § 2501.  A claim over which this Court has jurisdiction is "barred unless the petition thereon is filed within six years after such claim first accrues."  28 U.S.C. § 2501.  A claim against the government accrues when "all the events which fix the liability of the Government" have occurred and thereby "entitle the claimant to institute an action."  *Oceanic S.S. Co. v. United States*, 165 Ct. Cl. 217, 225 (1964).  In a breach of contract case, the statute of limitations begins to run from the date of nonperformance.  *See Kinsey v. United States*, 852 F.2d 556, 558 (Fed. Cir. 1988).

In its Motion to Dismiss, defendant argues that "all of the events giving rise to this action accrued no later than 2008," which is when plaintiff was paid $10,000 and terminated as a confidential informant.  Def.'s MTD at 10.  The Court agrees with defendant's understanding of when this cause of action accrued.  In *Oceanic S.S. Co.*, this Court found that, when the government is under a contractual obligation to pay money, "the claim first accrues on the date when the payment becomes due and is wrongfully withheld in breach of the contract."  165 Ct. Cl. at 225 (citing *Smith Courtney Co. v. United States*, 46 Ct. Cl. 262, 265–66 (1911)).  Here, the latest that the alleged breach could have occurred is April of 2008, when ICE terminated plaintiff's position as an informant.  Thus, for plaintiff's cause of action to be timely, plaintiff had to file his Complaint no later than April of 2014, not on June 21, 2019, as plaintiff did here.

Plaintiff contends that "the statute of limitations has been tolled[,] as it was not until recently that Plaintiff became aware of Defendants' [sic] refusal to comply with the terms of the Agreement."  Pl.'s Resp. at 8.  In promulgating his argument, plaintiff relies on this Court's decision in *Jakoby v. United States*, which discusses the import of the accrual suspension rule, and states that, "[f]or this court to toll the statute of limitations, the plaintiff must demonstrate that the Government 'has concealed its acts with the result that plaintiff was unaware of their existence or that [the] . . . injury was "inherently unknowable" at the accrual date.'"  38 Fed. Cl. 192, 195 (1997) (quoting *Japanese War Notes Claimants Ass'n v. United States*, 373 F.2d 356, 359 (1967), *cert. denied*, 389 U.S. 971 (1967)); *see also* Pl.'s Resp. at 7.  As the alleged contract contained no specific timeline for payments, plaintiff claims that he had "no way of knowing" how long the investigations would last or that his termination meant that he would not receive payments for past services.  Pl.'s Resp. at 8.  "As there was no clear date by which Defendant breached the Agreement," plaintiff argues that the statute of limitations therefore "did not start until after Plaintiff [submitted] his request for accounting" to the Agency in June of 2018.  *Id.* at 2, Ex. 1.

The Supreme Court has "long interpreted" that this Court's limitations statute, 28 U.S.C. § 2501, is "absolute," or "jurisdictional," and that it is therefore not subject to equitable tolling.  *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133–34, 137 (2008).  Thus, whether the defendant concealed its actions or the injury alleged was "inherently unknowable" is irrelevant to the Court's analysis in this case.  *See id.  Contra Jakoby*, 38 Fed. Cl. at 195.  Here, the plaintiff allegedly threatened to sue for the unpaid compensation after the "botched" operation in 2008, and he was subsequently "deactivated" shortly thereafter.  Compl. at 6.  However, plaintiff ultimately took no action until eleven years later, when he filed his Complaint on June 21, 2019.  *Id.*  The Court finds that plaintiff's threat to take legal action and subsequent inaction demonstrates that plaintiff both knew he would not be further compensated and that he had knowledge of his breach of contract claim in April of 2008.  As plaintiff was aware of the

4

alleged breach in 2008, this Court's six-year statute of limitations has therefore run, and plaintiff is barred from bringing the suit in this Court. As plaintiff's claim is time-barred, the Court need not address the merits of plaintiff's claims.

### IV.     Conclusion

Based on the foregoing, the Court **DISMISSES** plaintiff's claims for lack of subject-matter jurisdiction, as plaintiff's claims are time-barred pursuant to 28 U.S.C. § 2501. Accordingly, defendant's MOTION to Dismiss is hereby **GRANTED**. The Clerk is directed to enter judgment in favor of defendant, consistent with this Opinion and Order.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge